The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications. The Full Commission reversed the ruling of the Deputy Commissioner with respect to the testimony and exhibits of Dr. Timothy Garner, admitted those into evidence and fully considered them in reaching its decision in this matter.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated October 25, 1999 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter and over this claim, and this claim is properly before the Industrial Commission.
2. Plaintiff was employed by defendant-employer on May 28, 1997. Defendant-employer regularly employed and employs three or more employees and is subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Plaintiff's average weekly wage and resulting compensation rate will be determined pursuant to plaintiff's wage-earning records.
4. In addition to the deposition transcripts (excluding Dr. Garner's) and the exhibits attached thereto, the parties stipulated into evidence in this matter stipulated exhibit one, plaintiff's wage-earning records; and stipulated exhibit two, plaintiff's medical records, including updated medical records submitted subsequent to the hearing before the Deputy Commissioner in the matter. Plaintiff introduced and the Deputy Commissioner admitted into evidence in this matter plaintiff's exhibits one through four. These are: (1.) plaintiff's work evaluation dated May 19, 1997; (2.) a letter dated March 25, 1999 regarding plaintiff's last day worked for defendant-employer; (3.) plaintiff's accident report; (4.) plaintiff's application for long and short-term disability benefits; and (5.) a letter dated April 30, 1999 regarding plaintiff's application for disability benefits. Defendants introduced and the Deputy Commissioner admitted into evidence defendants' exhibit one, plaintiff's August 1996 short-term disability application; and defendants' exhibit two, plaintiff's answers to interrogatories. Plaintiff asked that the Deputy Commissioner take judicial notice of the dates various Industrial Commission forms were filed. Specifically, the Form 19 was filed on or about May 30, 1997, the Form 18 was filed on or about October 15, 1998, and the Form 33 was filed on or about February 1, 1999.
5. The issues to be determined as a result of the hearing before the Deputy Commissioner in this matter were whether plaintiff sustained a compensable aggravation of a preexisting injury, and if so, to what benefits she is entitled as a result.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in the matter, plaintiff was thirty-seven years old and was not then working in any capacity but was receiving long-term disability benefits.
2. Plaintiff was employed by defendant-employer in April 1995 in hose and electrical assembly. In late July 1996 plaintiff sought medical treatment for severe neck pain that radiated into her left shoulder and down her left arm. An MRI revealed two ruptured discs in her neck. Plaintiff therefore underwent fusion surgery at C4-5 and C5-6 on 7 August 1996, and was out of work approximately three months as a result. Plaintiff was released and returned to work in her previous capacity for defendant-employer on or about October 17, 1996. Dr. Amundson, a neurosurgeon, performed the surgery and treated plaintiff for this injury.
3. After the fusion surgery and her return to work, plaintiff continued under Dr. Amundson's care for several months, and on occasion she continued to see her family physician, Dr. Kruger, for her chronic neck pain. During the pendency of his treatment of plaintiff, Dr. Amundson noted that plaintiff was doing quite well following surgery, with occasional complaints of pain after over-exerting herself at work. On April 17, 1997, after reviewing recent x-rays, Dr. Amundson released plaintiff from his care, and noted that there was a very solid fusion and no instability at the surgical sites. No other treatment was deemed necessary.
4. Upon her release to return to work, plaintiff was able to work successfully in her full-duty capacity as a hose assembler for defendant-employer, with some complaints of pain as noted above. Plaintiff was not limited in her ability to work as a hose assembler for defendant-employer upon her return to work.
5. On May 28, 1997, while in the course and scope of her employment with defendant-employer, plaintiff was struck by a tow motor that was driven by a coworker. Plaintiff was in the warehouse doing hose assembly and was squatting down; the driver of the tow motor did not see her. Plaintiff, who was struck on the left side of her body, was knocked over and pushed a short distance. As a result of being hit by the tow motor, plaintiff suffered numerous abrasions and bruises, experienced immediate pain that shot down her left arm, and felt a burning sensation in her neck. Numerous witnesses corroborated that they heard plaintiff yell immediately prior and subsequent to the incident, and they thereafter saw her getting off the floor after being hit.
6. Plaintiff sought treatment that same day from Brigman Medical Emergency Clinic, where she reported that her neck was "feel[ing] funny." X-rays of plaintiff's cervical spine, left forearm and left shoulder were taken, none of which revealed fractures. However, an x-ray is not as sophisticated as other diagnostic tests available, such as MRIs and tomograms. In July 1997 plaintiff presented to her family physician, Dr. Kruger, an internist, with complaints of neck pain. Plaintiff treated with Dr. Kruger for several months, primarily for the ongoing prescription of medication for plaintiff's pain, with Dr. Kruger increasing the strength of the medication in April 1998 as plaintiff's complaints of pain had intensified.
7. Plaintiff's complaints continued to increase to the extent that Dr. Kruger ordered a repeat MRI in June 1998, which did not reveal a disc herniation. Dr. Kruger eventually referred plaintiff to Dr. Notrica at the Pain Management Clinic at Community General Hospital in Thomasville. Plaintiff underwent several epidural steroid injections and Dr. Notricia also prescribed medication for plaintiff's complaints of pain and difficulty sleeping. This treatment did not prove to offer long-term benefit or relief to plaintiff.
8. On June 30, 1998 Dr. Kruger assigned work restrictions of light duty and indicated that plaintiff was unable to lift greater than ten pounds, and was not to bend, stoop, or be on her feet. Because defendant-employer did not have suitable employment within these restrictions, plaintiff went out of work altogether. Despite the epidural steroid injections, plaintiff did not improve and returned to Dr. Amundson, her former neurosurgeon, on September 21, 1998.
9. Plaintiff reported to Dr. Amundson on September 21, 1998 with neck pain radiating up the back of her head and down to the lower part of both arms. Plaintiff informed Dr. Amundson that her symptoms had become more constant since she was hit by the tow motor at work the previous year. Dr. Amundson reviewed plaintiff's recent MRI and found changes from her previous MRI study; most notably, lucency at C5-6 possibly indicative of a fracture. Dr. Amundson recommended additional diagnostic testing.
10. A tomogram performed on her in October 8, 1998 confirmed that a portion of C5-6 was lucent and therefore the fusion at that level was not fully solid. Conservative therapy, including medication and the use of a collar, was begun to attempt to occify the fusion site without surgery. Dr. Amundson kept plaintiff out of work through the end of October 1998 and indicated that she could return to work thereafter at light duty with no lifting greater than five pounds, no pushing or pulling greater than fifteen pounds, and no overhead work. On November 13, 1998 a repeat tomogram again showed an incomplete fusion at C5-6. On November 30, 1998 Dr. Amundson recommended a surgical approach.
11. On February 17, 1999 Dr. Amundson performed a refusion and resection with plating at plaintiff's C5-6. While in surgery, Dr. Amundson discovered a very clear fracture line through plaintiff's C5-6, confirming his initial suspicion that had been based upon the diagnostic studies. Based upon plaintiff's history that she successfully returned to work after her initial surgery, was later hit by a tow motor at work on May 28, 1997, and her symptoms worsened after this incident, Dr. Amundson was of the opinion, and the Full Commission so finds, that the fracture at plaintiff's C5-6 was caused by plaintiff being hit by the tow motor. While it is undisputed that plaintiff had a significant history of preexisting cervical spine problems, the preexisting condition was not disabling after October 1996, and plaintiff was able to work in her preinjury employment. However, this accident on May 28, 1997 materially aggravated plaintiff's preexisting condition and caused the condition to become disabling.
12. Plaintiff obtained satisfactory results from the February 17, 1999 surgery, with subsequent x-rays showing solid fusion at the operative site. Dr. Amundson referred plaintiff to Dr. Barfoot, a physiatrist, at the Pain Management Center at the Rehab Center for pain management and for rehabilitation with the goal of returning plaintiff to work, and on July 26, 1999 Dr. Amundson assigned a five percent permanent partial impairment rating to plaintiff's cervical spine.
13. Plaintiff underwent an interdisciplinary approach at the Rehab Center under the direction of Dr. Barfoot, including work hardening with physical therapy and psychological counseling. Plaintiff treated at this program through mid-August 1999, and on August 12, 1999 Dr. Barfoot assigned a thirteen percent permanent partial impairment rating to plaintiff's cervical spine. As a result of the evaluations and treatment at this program, all of which were medically necessary in plaintiff's care, it was determined that plaintiff was unable to return to work in her former employment as a hose assembler. Plaintiff was given sedentary work restrictions with no lifting greater than ten pounds, no significant overhead work, and with frequent positional changes as well as alternating the use of her arms. Upon completion of this program, plaintiff was released to the care of her primary treating physician for ongoing treatment and medication.
14. Plaintiff last worked for defendant-employer on July 3, 1998. Defendant-employer, through its own admission, does not have a position that is suitable for plaintiff's physical capacity. As of the date of the hearing before the Deputy Commissioner in the matter, plaintiff had made no independent efforts to locate suitable employment; neither have defendants assisted plaintiff in locating suitable employment through vocational rehabilitation. Additionally, plaintiff was not at MMI as of the date of the hearing before the Deputy Commissioner and was unable because of her compensable injury to earn wages.
15. Plaintiff applied for long and short-term disability benefits on or about September 1, 1998. Plaintiff received approximately three months of short-term disability benefits, and has received ongoing long-term disability benefits since that time.
16. As a result of the compensable material aggravation of her preexisting condition, plaintiff has been totally disabled since July 3, 1998. However, given her age, education, and employment background, and the fact that she has been released to work within restrictions as imposed by her treating physicians, the Full Commission cannot find and hold by the greater weight of the evidence at this time that plaintiff is permanently totally disabled. Plaintiff is capable of working in some capacity; however, there is no evidence in this record showing that there are jobs available in the competitive job market that are suitable for plaintiff's physical capacity that she is capable of obtaining and performing.
17. Because Dr. Amundson was the physician who operated on plaintiff twice and actually saw the fracture that was caused by the tow motor, and because he actually treated plaintiff while Dr. Timothy B. Garner did not treat her but merely reviewed the medical records in reaching his conclusion that the tow motor accident did not cause the fracture, Dr. Amundson's evidence is given greater weight.
18. Plaintiff's average weekly wage at the time of the disability was $435.82, which yields a compensation rate of $290.57.
 ***********
Based on the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On May 28, 1997 plaintiff sustained a compensable injury by accident arising out of and in the course of her employment to her cervical spine when a tow motor hit her. N.C. Gen. Stat. § 97-2(6). This injury by accident materially aggravated her underlying, preexisting condition by fracturing the surgically-fused disc, and contributed in some reasonable degree to plaintiff's ongoing disability. Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
2. As a result of her compensable injury by accident that materially aggravated an underlying, preexisting condition, plaintiff has been unable to earn wages since July 3, 1998, and is entitled to benefits as a result. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit for any employer-funded disability benefits received by plaintiff. N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to have defendants provide medical compensation for all medical treatment that was or is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability, including vocational rehabilitation if initiated by defendants. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Plaintiff was totally unable to earn any wages for periods of time as a result of her compensable injury and, although some of her physicians say she can return to work with restrictions, there is no evidence in this record of what her earning capability might be. Additionally, she has not reached the end of the healing period. Accordingly, plaintiff is entitled to continuing disability until further order of the Industrial Commission.
 ***********
The foregoing findings of fact and conclusions of law result in the following
 AWARD
1. Subject to any credit owed defendants and to the attorney's fee awarded below, defendants shall pay plaintiff disability compensation in the weekly amount of $290.57 beginning July 3, 1998 and continuing until plaintiff returns to work or until further order of the Industrial Commission. All compensation that has accrued shall be paid in a lump sum.
2. Plaintiff's attorney is entitled to a reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff herein. Accordingly, of the accrued amount owed plaintiff, defendants shall deduct twenty-five percent and forward that amount directly to plaintiff's counsel. For ongoing benefits, defendants shall forward every fourth compensation check directly to plaintiff's counsel.
3. Because plaintiff is owed continuing disability compensation pursuant to this Opinion and Award, she is not yet entitled to receive compensation for her permanent disability rating.
4. Defendants shall provide plaintiff with all medical compensation for treatment that was or is reasonably necessary to effect a cure, give relief, or lessen the period of her disability.
5. Defendants shall bear the costs of this proceeding.
This 8th day of November 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER